**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**DELAIZARAH ZGRAGGEN ROSARIO,**

        Plaintiff,

-vs-                                            Case No. 6:10-cv-1931-Orl-GJK

**COMMISSIONER OF SOCIAL SECURITY,**

        **Defendant.**
_____

**MEMORANDUM OF DECISION**

Delaizarah Zgraggen Rosario (hereafter "Claimant") maintains she became disabled on or about October 17, 2005, due to bipolar disorder, anxiety, asthma, thyroid condition and carpal tunnel syndrome. R. 15, 26-29, 370. This is Claimant's second appeal of a final decision of the Commissioner of Social Security (hereafter "Commissioner") denying her applications for disability benefits. R. 367-86. This Court reversed and remanded the initial denial of Claimant's applications for disability benefits because the Commissioner did not state the weight given to various medical opinions submitted for consideration. R. 422. The Commissioner held a rehearing on September 9, 2010, finding once again that Claimant was not disabled and denying her applications for disability benefits. R. 367-86, 783.[1]

Claimant raises three issues on appeal. Claimant contends the Administrative Law Judge (hereafter "ALJ") erred in giving little weight to the opinion of her treating physician, Najir

---

[1] While her first appeal was pending, Claimant filed two additional applications seeking social security disability insurance benefits and supplemental security income. R. 428, 430. The Commissioner consolidated and considered these applications along with Claimant's initial applications. R. 370.

Kirmani, M.D. Doc. No. 15 at 12-16. Claimant asserts the ALJ erred in finding that jobs existed in the national economy that she could perform because the ALJ's hypothetical to the vocational expert did not account for her moderate limitations in concentration, persistence and pace. Doc. No. 15 at 7-12. Claimant contends the ALJ erred in accepting the vocational expert's testimony as to jobs she could perform because the vocational expert's testimony conflicted with the Dictionary of Occupational Titles (hereafter "DOT"). Doc. No. 15 at 16-18. Claimant requests this Court reverse the Commissioner's decision and remand for an award of disability benefits or remand for another hearing. Doc. No. 15 at 19. For the reasons set forth below, the Commissioner's decision is **AFFIRMED**.

I.  **MEDICAL HISTORY**

Claimant's medical history has previously been set forth in this Court's prior memorandum of decision. *Rosario v. Comm'r of Social Sec.*, No. 6:09-cv-209-Orl-GJK (M.D. Fla. Mar. 1, 2010). The Court adopts that medical history and incorporates it herein by reference.

Dr. Kirmani is Claimant's treating psychiatrist. R. 383. In August 2008, Dr. Kirmani wrote in a prescription note that "[Claimant] is unable to work due to her psychiatric condition." R. 300. In his December 2008, "Treating Source Mental Health Report," Dr. Kirmani indicated that Claimant's thought process was "logical and clear"; her thought content was "appropriate"; her memory was "intact"; there was "no evidence" that Claimant was suffering from hallucinations; his behavioral observations of Claimant were "within normal limits"; and that Claimant had a "slight impairment" in concentration. R. 696-97. Dr. Kirmani indicated that Claimant "may be able to work in limited setting." R. 697. Yet, Dr. Kirmani indicated that

Claimant was not capable of maintaining full time employment because Claimant had "impaired concentration," could not "keep pace" and had "some limitations in social interaction." R. 697.

In August 2009, Dr. Kirmani completed a Medical Verification Form that indicated Claimant suffered from the permanent conditions of bipolar disorder and posttraumatic stress disorder that prevented her from working. R. 735-36. From January 2009 to May 2010, Dr. Kirmani filled out a number of "Brief Psychiatric Assessment" forms that consistently diagnosed Claimant with bipolar disorder and posttraumatic stress disorder. R. 538-52. On these forms, Dr. Kirmani also assessed Claimant with a Global Assessment of Function score between 45 and 50. R. 538-52.

Three non-examining doctors, Theodore Weber, Psy.D., Eric Wiener, Ph.D. and Richard Willens, Psy.D., also offered opinions. R. 700, 718, 748. Dr. Weber, Dr. Wiener and Dr. Willens reviewed Claimant's medical records and found that Claimant was "moderately limited" in her ability to maintain attention and concentration for extended periods of time. R. 700, 718, 748. This moderate limitation notwithstanding, Dr. Weber concluded that Claimant was "capable of completing simple tasks on a regular basis" and "could work in a limited setting." R. 702. Dr. Wiener concluded that Claimant "seemed mentally capable of independently performing routine tasks in a low demanding work environment." R. 720. Dr. Willens concluded that Claimant has a "limited ability to sustain CPP for extended period but should be able to complete simple tasks for 6-8 hours in an eight-hour period at an appropriate pace, and sustain this level across days and weeks." R. 750. Dr. Willens also concluded that Claimant "can understand, retain, and carry out simple instructions," as well as "consistently and usefully perform routine tasks on a sustained basis." R. 750.

## II.     ADMINISTRATIVE PROCEEDINGS

On March 1, 2010, this Court reversed and remanded, pursuant to sentence four of 42 U.S.C. § 405(g), the Commissioner's initial decision to deny Claimant's applications for disability benefits. R. 403-22. On September 9, 2010, pursuant to this Court's remand, a rehearing was held before ALJ Pamela Houston. R. 783. At the rehearing, Claimant and Ronald Spitznagel, a vocational expert, testified. R. 784. In addition to the record evidence previously received, the ALJ also admitted into evidence "Brief Psychiatric Assessment" forms completed by Dr. Kirmani. *See* R. 536-58, 785.

At the hearing, Claimant testified that she worked full-time at a thrift store for three weeks in 2007, but was fired because she "wasn't doing the stuff that I was supposed to be doing right" and she missed two days because she was feeling "severely depressed." R. 792. Prior to her alleged onset date of disability, Claimant worked as a fitness technician, secretary, fast food worker and general clerk. R. 376, 818, 820. Claimant testified that she experiences auditory hallucinations almost every day and is "very depressed." R. 794. Claimant also testified to having panic attacks every day, ranging from severe to moderate. R. 794-95. Claimant testified that she takes Xanax which relaxes her and makes her sleepy such that she takes a couple of naps every day. R. 797-99. Claimant also testified to driving on a weekly basis, grocery shopping, house cleaning, helping with her youngest son's homework and participating in his extracurricular activities. R. 800-04.

Claimant also testified to various physical ailments stemming from a bus accident in 2001: neck pain, back pain, hip pain, headaches, and exacerbation of her carpal tunnel syndrome. R. 811-13, 817. Claimant testified that she did not believe there were any jobs she

could perform and that she cannot keep a job because "I know my depression is not going to get better." R. 819.

The ALJ also received testimony from Ronald Spitznagel, a vocational expert. R. 822.[2] The ALJ asked Spitznagel to consider a hypothetical person with the following limitations:

1. The individual can "lift no more than ten pounds occasionally, sit, stand, and walk for six out of eight hours with normal breaks, unlimited pushing and pulling with extremities but consistent with the weight, the lift and carry limitation of ten pounds." R. 824.

2. The individual has "[l]imited fingering and grasping bilaterally to frequent, no overhead reaching, occasional climbing but never ladders, ropes, or scaffolds, occasional stooping, crouching [or] crawling . . . ." R. 824.

3. The individual can perform "simple, routine, and repetitive [tasks] in an environment where she can work within her own work space, meaning there's no third parties walking in an out of her area that would cause distractions . . . ." R. 824.

4. The individual's "[i]nteraction with third parties should be limited to that which is necessary to complete the task, otherwise brief and superficial," and only "occasional interaction with the general public." R. 825.

5. The individual's work environment would consist of a desk, cubicle or space, but not like a fast food environment. R. 825.

In light of these limitations, the ALJ asked if "such a hypothetical individual [could] perform any of the prior work of the claimant either as she performed it or as it is typically

---

[2] Claimant did not object to Spitznagel's qualifications and his testimony was received without objection. R. 785, 822-29.

performed?" R. 825-26.  Spitznagel responded that the hypothetical individual "could not return to any of the past relevant work" performed by Claimant.  R. 826.  The ALJ then asked if "there be [would] any other work in the local or national economy for such a hypothetical individual?"  R. 826.  Spitznagel identified three jobs:

1. Surveillance System Monitor, DOT number 379.367-010, scheduled as sedentary with an SVP of 2.  Approximately 40,000 jobs in the national economy; 2,000 in Florida (R. 826);

2. Order Clerk Food and Beverage, DOT number 209.567-014, scheduled as sedentary with an SVP of 2.  Approximately 35,000 jobs in the national economy; 1,200 in Florida (R. 826-27); and

3. Lamp Shade Assembler, DOT number 739.684-094, scheduled as sedentary with an SVP of 2.  Approximately 25,000 jobs in the national economy; 1,000 in Florida.  R. 827.

After identifying these jobs, the following colloquy ensued:

> Q.   Alright, if you assume that the individual would miss two or more days per month from work, how long -- if that would be tolerated, how long would it be tolerated?
>
> A.   Well, generally when I do my job analysis and talk with the employers, they stress that it's a maximum of two days per month that's allowable but even then they hedge on that and say now we'd rather them not use their annual leave for sick leave.
>
> . . . .
>
> A.   And employers don't want to, you know, they don't want to have to be replacing there [sic] unskilled workers two, three times a month.  So, I would say with that part added to the hypothetical that maintaining a competitive employment would be rather difficult.

> Q. Okay, and if the individual could not complete a task during any particular work day, it could vary up to occasionally, so from one to 33 percent, could that person maintain gainful work?
>
> A. Once again, with unskilled workers, employers wouldn't put up with that, even, probably even ten percent of the day.
>
> Q. Okay, so no work?
>
> A. They would not be able to maintain competitive employment.

R. 827-28. Thus, Spitznagel testified that this hypothetical person would have difficulty maintaining employment if she had to miss two days per month and would be unable to maintain competitive employment if she could not complete tasks even ten percent of the day.

On cross-examination, Claimant's counsel elicited the following testimony:

> Q. All three of the jobs you mentioned, are they all full-time, 40 hours a week, eight hours a day, five days a week?
>
> A. Yes, they are.
>
> Q. Alright, and they would all require the ability to concentrate, correct? The person would have to stay focused for the eight hours a day, five days a week?
>
> A. Yeah, I mean, most jobs you'd have to stay focused on your task. Although with some unskilled jobs, it sort of become wrote [sic] but the ones I gave, those don't fall in that category.
>
> Q. You mean they would require concentration?
>
> A. They would require concentration, yes, sir, yes.
>
> Q. Alright, so, so any significant limitations on concentration is going to knock out these jobs?
>
> A. It would knock out that job, yes.

R. 828-29.

On October 27, 2010, the ALJ issued a decision denying Claimant's applications for disability benefits. R. 367-86.[3] The ALJ made the following significant findings:

1. Claimant "meets the insured status requirements of the Social Security Act through June 30, 2009." R. 372.

2. Claimant has not "engaged in substantial gainful activity since October 17, 2005, the alleged onset date." R. 372 (internal citations omitted).

3. Claimant has the following severe impairments: Bipolar disorder, associated with depression, anxiety, and panic attacks; mild degenerative disc disease of the cervical and lumbar spine; and status-post carpal tunnel release syndrome of the right wrist. R. 373.

4. Claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 373.

5. Claimant has the residual functional capacity to perform light work, with the following limitations: occasional lifting and carrying of no more than ten pounds; sitting, standing or walking for six hours out of an eight-hour workday; unlimited pushing and pulling of no more than ten pounds; frequent fingering and grasping bilaterally, no overhead reaching; occasional stooping, crouching, crawling and climbing, but never ladders, ropes or scaffolds; simple, routine, repetitive tasks within her own workspace; interaction with third parties limited to that necessary to complete the task, otherwise brief and superficial; and only occasional interaction

---

[3] The ALJ's decision contains a typographical error indicating it was rendered on August 27, 2010. R. 367, 386. The first page of the decision strikes through "Aug" and has a handwritten notation of "Oct." R. 367. The parties agree the ALJ's decision was rendered on October 27, 2010. Doc. Nos. 15 at 3; 16 at 2.

>with the general public. R. 375-76.

>6. Claimant cannot perform any past relevant work. R. 384.

>7. Claimant is able to perform other work that exists in significant numbers in the national economy. R. 385.

>8. Claimant has not suffered from a disability, as defined in the Social Security Act, from October 17, 2005, through the date of the decision. R. 386.

In determining that Claimant has the residual functional capacity to perform light work, subject to the limitations set forth above, the ALJ gave little weight to Dr. Kirmani's statement that Claimant could not work full time because it "is wholly inconsistent with his own findings and notes from the treatment plan." R. 383. The ALJ also assigned little weight to Dr. Kirmani's Medical Verification Form (R. 735) which indicated that Claimant's "permanent condition prevents her from working, volunteering or attending school" because "this statement is inconsistent with his findings and the overall objective medical evidence." R. 383.

On December 27, 2010, Claimant filed an appeal with this Court. Doc. No. 1.

### III. THE PARTIES' POSITIONS

Claimant raises three issues on appeal: 1) the ALJ erred in giving little weight to the opinion of her treating physician, Dr. Kirmani; 2) the ALJ erred in finding that jobs existed in the national economy that she could perform because the ALJ's hypothetical to the vocational expert did not account for her moderate limitations in concentration, persistence and pace; and 3) the ALJ erred in accepting the vocational expert's testimony because it was inconsistent with the DOT. Doc. No. 15 at 16. Claimant requests the Commissioner's decision be reversed and

remanded for an award of disability benefits or remanded for another hearing. Doc. No. 15 at 19.

The Commissioner argues that substantial evidence supports his decision that the Claimant is not disabled. Doc. No. 16. The Commissioner maintains: 1) the ALJ applied the correct legal standard in weighing the opinion of Claimant's treating physician, Dr. Kirmani; 2) the ALJ properly relied on Spitznagel's testimony to find there were jobs that existed in the national economy that Claimant could perform; and 3) the ALJ properly relied on Spitznagel's testimony concerning the jobs Claimant could perform; and 4) Claimant's request for reversal and remand for an award of benefits is inappropriate because the general rule is to remand for further proceedings. Doc. No. 16. Thus, the Commissioner maintains the ALJ's decision should be affirmed. Doc. No. 16.

## IV. <u>LEGAL STANDARDS</u>

### A. THE ALJ'S FIVE-STEP DISABILITY ANALYSIS

Under the authority of the Social Security Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled. *See* 20 CFR §§ 404.1520(a), 416.920(a). In *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001), the Eleventh Circuit explained the five-step sequential evaluation process as follows:

> In order to receive disability benefits, the claimant must prove at step one that he is not undertaking substantial gainful activity. At step two, the claimant must prove that he is suffering from a severe impairment or combination of impairments. At step three, if the claimant proves that his impairment meets one of the listed impairments found in Appendix 1, he will be considered disabled without consideration of age, education, and work experience. If the claimant cannot prove the existence of a listed impairment, he

> must prove at step four that his impairment prevents him from performing his past relevant work. At the fifth step, the regulations direct the Commissioner to consider the claimant's residual functional capacity, age, education, and past work experience to determine whether the claimant can perform other work besides his past relevant work.

*Id*. (citations omitted). The steps are followed in order. If it is determined that the claimant is not disabled at a step of the evaluation process, the evaluation will not go on to the next step.

### B.   STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (*citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *accord*, *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

Where the Commissioner's decision is supported by substantial evidence, the District Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The District Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord*, *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings); *Parker v. Bowen*, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner

relied). The District Court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004).

## V. ANALYSIS

### A. The ALJ did not Err in Giving Dr. Kirmani's Opinion Little Weight.

Weighing the opinions and findings of treating, examining, and non-examining physicians is an integral part of steps four and five of the ALJ's sequential process for determining disability. Absent good cause, the opinions of treating or examining physicians must be accorded substantial or considerable weight. *Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988).

> Good cause exists when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir.2004) (citations omitted); *see also Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir.1991); *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir.1986).

*Johnson v. Barnhart*, 138 F. App'x. 266, 269 (11th Cir. 2005).

"The opinion of a non-examining physician does not establish the good cause necessary to reject the opinion of a treating physician." *Id.* Moreover, the opinions of a non-examining physician do not constitute substantial evidence standing alone. *Spencer ex rel. Spencer v. Heckler*, 765 F.2d 1090, 1094 (11th Cir. 1985). The opinions or findings of a non-examining physician are entitled to little weight when they contradict the opinions or findings of a treating or examining physician. *Lamb*, 847 F.2d at 703. The ALJ may, however, reject any medical opinion if the evidence supports a contrary finding. *Sryock v. Heckler*, 764 F.2d 834, 835 (11th

Cir. 1986). Nonetheless, the ALJ must state with particularity the weight given different medical opinions and the reasons therefore, and the failure to do so is reversible error. *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987).

Claimant argues the ALJ should have given Dr. Kirmani's opinions substantial weight because his opinions are "well-supported and not inconsistent with the other substantial evidence in the case record." Doc. No. 15 at 15. In support, Claimant points to Dr. Kirmani's repeated and consistent diagnosis of Claimant with bipolar disorder and post-traumatic stress disorder. Doc. No. 15 at 13-15. Claimant also points out that in his Medical Verification Form, Dr. Kirmani opined that Claimant's "permanent condition prevented her from working, volunteering, or attending school." Doc. No. 15 at 15. Claimant argues that "[t]his opinion is consistent with the rest of Dr. Kirmani's evaluations and, therefore, should be given substantial weight." Doc. No. 15 at 15. Thus, Claimant contends that because Dr. Kirmani consistently diagnosed Claimant as suffering from bipolar disorder and post-traumatic stress disorder, that his conclusion that Claimant cannot work should have been given substantial weight.

In *Edwards*, 937 F.2d at 582, the claimant's treating physician opined, without explanation, that the claimant could only work four hours per day. The treating physician later indicated that it would be "appropriate" for the claimant to return to work, but did not indicate whether claimant should still be limited to a four hour work day. *Id.* at 584. The Eleventh Circuit upheld the ALJ's decision not to rely on the treating physician's opinions because the treating physician's limitation of the claimant to a four hour work day was conclusory and was not accompanied by any "clinical data or information to support his opinion." *Id.* at 583. The Eleventh Circuit also found that the treating physician's subsequent opinion that the claimant

could return to work without imposing the four hour restriction "casts doubt" on the claimant's need to be restricted to a four hour workday. *Id.* at 584.

In this case, Dr. Kirmani, in his Medical Verification Form, simply concludes that Claimant is unable to work without providing any support for that conclusion. A "treating physician's report may be discounted when it is not accompanied by objective medical evidence or is wholly conclusory." *Id.* at 583. In his "Treating Source Mental Health Report," Dr. Kirmani indicates that Claimant "may be able to work in limited setting." R. 697. In the same report, however, Dr. Kirmani concludes Claimant is incapable of sustaining "work activity for eight hours a day, five days a week" because Claimant has "impaired concentration, cannot keep pace, [and has] some limitation in social interaction." R. 697. Dr. Kirmani provides no explanation for this seemingly contradictory finding, thereby casting "doubt" on Claimant's inability to work. *See Edwards*, 937 F.2d at 584. The ALJ specifically noted this inconsistency in weighing Dr. Kirmani's opinions. Consequently, the ALJ had good cause to give Dr. Kirmani's opinions little weight.

Further, Dr. Kirmani's opinion that Claimant is unable to work is not binding on the ALJ. Determining whether a claimant is disabled or unable to work is an issue reserved for the Commissioner. *See Gainous v. Astrue*, 402 F. App'x. 472, 475 (11th Cir. 2010).

**B. The ALJ's Hypothetical to the Vocational Expert Adequately Accounted for Claimant's Moderate Limitations in Concentration, Persistence and Pace.**

When "medical evidence demonstrates that a claimant can engage in simple, routine tasks or unskilled work despite limitations in concentration, persistence, and pace, courts have concluded that limiting the hypothetical to include only unskilled work sufficiently accounts for

such limitations." *Winschel v. Comm'r of Social Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011). "Furthermore, an ALJ's hypothetical restricting the claimant to simple and routine tasks adequately accounts for restrictions related to concentration, persistence and pace where the medical evidence demonstrates that the claimant retains the ability to perform the tasks despite concentration deficiencies." *Jarrett v. Comm'r of Social Sec.*, 422 F. App'x. 869, 872 (11th Cir. 2011).

In *Jarrett*, 422 F. App'x at 872, the ALJ's hypothetical to the vocational expert restricted the individual to work involving simple instructions and tasks. The Eleventh Circuit concluded that the ALJ's hypothetical sufficiently accounted, both explicitly and implicitly, for the claimant's limitations in concentration, persistence and pace because two non-examining consultants opined the claimant could perform simple tasks despite the claimant's moderate limitation in maintaining concentration, persistence and pace. *Id.*

In this case, Dr. Weber, Dr. Wiener and Dr. Willen all found that Claimant was "moderately limited" in her ability to "carry out detailed instructions" and "maintain attention and concentration for extended periods." R. 700, 718, 748. Despite this limitation, these doctors all found that Claimant could perform simple or routine tasks. R. 702, 720, 750. The ALJ's hypothetical limited the work to "[t]asks [that] can be performed that are simple, routine, and repetitive in an environment where she can work within her own work space . . . ." R. 824. Consequently, the ALJ's hypothetical properly accounted for Claimant's "moderate limitation" in attention, persistence and pace. *See Jarrett*, 422 F. App'x. at 872.

**C. The ALJ Properly Relied on the Vocational Expert's Testimony as to the Jobs Claimant could Perform.**

The ALJ did not err in relying on Spitznagel's testimony as to the jobs Claimant could perform. Assuming arguendo that Spitznagel's testimony conflicted with the DOT, the testimony of a vocational expert "trumps" an inconsistent provision of the DOT. *See Jones v. Apfel*, 190 F.3d 1224, 1229-30 (11th Cir. 1999); *Miller v. Comm'r of Social Sec.*, 246 F. App'x. 660, 662 (11th Cir. 2007). Although Social Security Rulings 00-4p requires an ALJ to "elicit a reasonable explanation" for any "apparent unresolved conflict" between the testimony of the vocational expert and the DOT, this agency ruling is not binding on the court. *See Miller*, 246 F. App'x. at 662. Further, the ALJ is not required to resolve a conflict that is not identified at the hearing and, is not otherwise apparent. *See Kelley v. Astrue*, 2009 WL 2731341 at *7 (M.D. Fla. Aug. 26, 2009); *Brijbag v. Astrue*, 2008 WL 276038 (M.D. Fla. Jan. 31, 2008).

In the case at bar, Claimant did not object or otherwise alert the ALJ to a potential conflict between Spitznagel's testimony and the DOT. Spitznagel did not indicate that his testimony conflicted with the DOT. The ALJ is not obligated to "independently corroborate the [vocational expert's] testimony and should be able to rely on such testimony where no apparent conflict exists with the DOT." *Brijbag*, 2008 WL 276038 at *2. The Court does not find that there was an "apparent conflict" between Spitznagel's testimony and the DOT. Even if there was a conflict, the ALJ was entitled to rely on Spitznagel's testimony because the testimony of a vocation expert "trumps" the DOT. *See Miller*, 246 F. App'x. at 662.

## VI.   CONCLUSION

For the reasons stated above, it is **ORDERED** that the Commissioner's decision is **AFFIRMED**.  The Clerk is directed to enter Judgment in favor of the Commissioner and close the case.

**DONE** and **ORDERED** in Orlando, Florida on December 5, 2011.

/s/ Gregory J. Kelly
GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE

The Court Requests the Clerk Mail
or Deliver Copies of this Order to:

Richard Culbertson
Law Office of Richard A. Culbertson
Suite E
3200 Corrine Dr.
Orlando, Florida 32803

John F. Rudy, III
U.S. Attorney's Office
Suite 3200
400 N. Tampa St.
Tampa, Florida  33602

Mary Ann Sloan, Regional Chief Counsel
Dennis R. Williams, Deputy Regional Chief Counsel
Christopher G. Harris, Assistant Regional Counsel
Office of the General Counsel, Region IV
Social Security Administration
61 Forsyth Street, S.W., Suite 20T45
Atlanta, Georgia  30303-8920

The Honorable Pamela Houston
Administrative Law Judge
c/o Office of Disability Adjudication and Review
Suite 300
3505 Lake Lynda Dr.
Orlando, Florida  32817-9801